UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 23-85 |
| v. | * | SECTION: "B" |
| SIEDAH ELEY | * | |

* * *

## FACTUAL BASIS

The defendant, **SIEDAH ELEY** (hereinafter, the "defendant" or "**ELEY**"), has agreed to plead guilty to Count One of the Bill of Information currently pending against her, charging **ELEY** with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Sections 371 and 1343. Should this matter proceed to trial, both the Government and the defendant, **SIEDAH ELEY**, do hereby stipulate and agree that the following facts set forth a sufficient factual basis for the crime to which the defendant is pleading guilty. The Government and the defendant further stipulate that the Government would have proven, through the introduction of competent testimony and admissible, tangible exhibits, the following facts beyond a reasonable doubt to support the allegations in the Bill of Information now pending against the defendant:

### *Introduction*

The government would establish that, at all times material, **ELEY** was a resident of Columbia, Maryland. **ELEY** maintained multiple financial accounts, including one at Stride Bank.

The Government would further establish that Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, Co-Conspirator 4, Co-Conspirator 5, Co-Conspirator 6, and Co-Conspirator 7 were adult friends, relatives, and associates of **ELEY**.

AUSA _____
Defendant _____
Defense Counsel _____

The Government would further establish that the United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of its efforts, the SBA provided business loans through banks, credit unions, and other lenders. Those loans had government backed guarantees.

The Government would further establish that the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was a federal law enacted in or about March 2020. The CARES Act provided emergency financial assistance to the millions of Americans suffering the economic effects of the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

Page **2** of **7**

AUSA _____
Defendant _____
Defense Counsel _____

The Government would further establish that among the types of businesses eligible for a PPP loan were individuals who operated under a "sole proprietorship" business structure. To be eligible to receive such a PPP loan, individuals had to report and document their income and expenses from the sole proprietorship, as typically reported to the IRS on Form 1040, Schedule C, for a given tax year. The lending institution or loan processor used this information to calculate the amount of money the individual was entitled to receive under the PPP. The maximum PPP loan amount for a sole proprietor with no employees was $20,833.00.

The Government would further establish that a PPP loan application was required to be processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan. Among the participating lending agencies were "Prestamos CDFI," "Capital Plus Financial," and "Benworth Capital."

The Government would further establish that PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

### *Conspiring to Submit Fraudulent PPP Applications*

The Government would establish **ELEY** used the same strategy to create, generate, and submit multiple fraudulent PPP loan applications. **ELEY** used via word-of-mouth and text message to solicit individuals interested in obtaining money from the PPP program with her

Page 3 of 7

AUSA
Defendant
Defense Counsel

assistance fraudulently. When someone expressed interest, **ELEY** requested that she receive the following information for the applicant: the applicant's name, address, social security, and phone number, a copy of the front and back of the applicant's driver's license, a bank statement from 2020, and the routing and account number for the applicant's bank account. **ELEY** then created a false and fraudulent loan application. Among the false representations **ELEY** included in the pertinent forms was that the applicant had a sole proprietorship in the beauty industry and generated substantial income from those businesses. **ELEY** also submitted financial numbers that overstated the gross receipts, expenses, and net income for the business, which resulted in the creation of a false federal tax Form 1040, Schedule C by the online portal that accepted and processed the application. In several instances, where the applicant actually received income in a *de minimis* amount from work in the beauty industry, **ELEY** knowingly inflated the amount of income falsely. Each of the above-described false representations constituted a misstatement that was material to the determination of the eligibility of the applicant and the loan amount the applicant would receive.

The Government would further establish that **ELEY** prepared and submitted the false and fraudulent PPP sole proprietor loan applications via the Blueacorn online portal. The submission of each loan application caused the transmission of wire communications in interstate commerce. **ELEY** falsely certified that the applications and the information provided in the supporting documents were true and accurate when she electronically submitted the fraudulent PPP loan applications. After an application was accepted, money was disbursed from one of the lending agencies referenced above to the applicant via electronic means to the account listed on the application. Once the loan was paid to the applicant, **ELEY** charged some applicants up to $5,000.00 for preparing and submitting the fraudulent PPP application. **ELEY** received the funds

AUSA _____
Defendant _____
Defense Counsel _____

from the applicable co-conspirator either in cash, after the applicant withdrew cash from his account, or by electronic means, including the Zelle digital payment network.

The Government would further establish that, in total between about April 19, 2021, and May 20, 2021, **ELEY**, Co-Conspirator 1 (Loan number x68700), Co-Conspirator 2 (Loan number x68704), Co-Conspirator 3 (Loan number x19005), Co-Conspirator 4 (Loan number x58908), Co-Conspirator 5 (Loan number x98710), Co-Conspirator 6 (Loan number x18808), and Co-Conspirator 7 (Loan number x18700) defrauded the Small Business Administration (SBA) and other designated financial institutions of approximately $166,656 through submission of approximately 8 fraudulent PPP loan applications in the manner described above.

Included among the loans obtained through the above-described fraudulent scheme were those for **ELEY** herself and Co-Conspirator 1.

*Fraudulent Application for Eley*

The Government would further establish that on or about April 23, 2021, **ELEY** completed and submitted a false PPP loan application in her own name and on behalf of herself (Loan number x58704). **ELEY** submitted the loan application via electronic means, which caused the transmission of wire communications in interstate commerce. The application contained numerous material misrepresentations, including a false Form 1040, Schedule C that substantially overstated her gross receipts, expenses, net income for her business and the purpose for which **ELEY** sought the loan. As a result of the fraudulent application, **ELEY** received approximately $20,832, via electronic deposit into her Stride Bank account. Thereafter, **ELEY** sought and received forgiveness of the loan.

Page **5** of **7**

AUSA
Defendant
Defense Counsel

*Fraudulent Application for Co-Conspirator 1*

The Government would further establish that on or about May 4, 2021, **ELEY** completed submitted a false PPP loan applicant in the name of Co-Conspirator 1 (Loan Number x68700). **ELEY** submitted the loan via electronic means, which caused the transmission of wire communications in interstate commerce. The application contained numerous material misrepresentations, including a false Form 1040, Schedule C that substantially overstated Co-Conspirator 1's gross receipts, expenses, net income for Co-Conspirator 1's business and the purpose for which Co-Conspirator 1 sought the loan. As a result of the fraudulent application, Co-Conspirator 1 received approximately $20,832, via electronic means into Co-Conspirator 1's JPMorgan Chase Bank account.

## *Limited Nature of Factual Basis and Conclusion*

This proffer of evidence is not intended to constitute a complete statement of all facts known by **SIEDAH ELEY** and the Government. Rather, it is a minimum statement of facts intended to prove the necessary factual predicate for her guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the plea of guilty to the charged offense by **SIEDAH ELEY**.

AUSA
Defendant
Defense Counsel

The above facts derive from an investigation conducted by, and would be proven at trial by credible testimony from, Special Agents from the United States Secret Service, as well as other witnesses, and documents in the possession of the United States Secret Service.

**APPROVED AND ACCEPTED:**

_____
JORDAN GINSBERG
Assistant United States Attorney

_5/22/23_____
Date

_____
JOHN MCLINDON
Counsel for Defendant

_5-22-23_____
Date

_____
ALEX LAIRD
Counsel for Defendant

_5-22-23_____
Date

_____
SIEDAH ELEY
Defendant

_5/22/23_____
Date